FILED 12/27/2022 5:13 PM
David Trantham
Denton County District Clerk
By: Jenny Hernandez, Deputy

22-10912-431

CAUSE NO. _____

| | | |
|---|---|---|
| **MSCI INVESTMENTS, INC.,** | § | **IN THE DISTRICT COURT** |
| **a Texas Corporation,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **\_\_\_\_\_ JUDICIAL DISTRICT** |
| | § | |
| **BOTTLED CITY HOLDINGS,** | § | |
| **LLC – SERIES B INTEREST,** | § | |
| **a Delaware Series Limited Liability`** | § | |
| **Company,** | § | |
| **INTEGRA CAPITAL, LLC,** | § | |
| **a Delaware Limited Liability Company,** | § | |
| **CJK HOLDINGS, LLC, a Delaware** | § | |
| **Limited Liability Company, AND** | § | |
| **JEFFREY JOHNSTON-LEGG,** | § | |
| **Individually and as Manager,** | § | |
| | § | |
| **Defendants.** | § | **DENTON COUNTY, TEXAS** |

---

### PLAINTIFF'S ORIGINAL PETITION
### FOR DECLARATORY JUDGMENT

---

**TO THE HONORABLE JUDGE OF SAID COURT**:

Plaintiff MSCI INVESTMENTS, INC. respectfully submits this Original Petition for Declaratory Judgment ("Petition"), pursuant to TEX. CIV. PRAC. & REM. CODE § 37.001 et al., complaining of Defendants BOTTLED CITY HOLDINGS LLC – SERIES B INTEREST ("BCH"), INTEGRA CAPITAL, LLC ("Integra"), CJK HOLDINGS, LLC ("CJK"), and JEFFREY JOHNSTON-LEGG ("JJL" or "Legg"), in both his individual capacity and in his capacity as Manager of Defendants Integra and CJK, and in support thereof respectfully shows the Court as follows:

*Plaintiff's Original Petition for Declaratory Judgment – Page 1*

Copy from re:SearchTX

**EXHIBIT 1-2**

## I.
## DISCOVERY CONTROL PLAN

1.      Discovery in this lawsuit is intended to be conducted under Level 2 pursuant to TEX. R. CIV. P. 190.3.

2.      The expedited-actions process under TEX. R. CIV. P. 169 does not apply to this lawsuit because Plaintiff does not seek only monetary relief aggregating $250,000 or less.

3.      This proceeding is not exempt from the requirement of Initial Disclosures pursuant to TEX. R. CIV. P. 194.

## II.
## PARTIES

4.      Plaintiff MSCI INVESTMENTS, INC. ("Plaintiff" or "MSCI") is a for-profit corporation organized and existing under the laws of the State of Texas since September 11, 2008, with its principal place of business located at 1811 Shady Oaks Drive, Suite 190, Denton, Denton County, Texas 76205.  Plaintiff is not required to comply with the pleading requirements of TEX. CIV. PRAC. & REM. CODE § 30.014(a) in that Plaintiff does not have a driver's license or social security number.  For purposes of complying with the pleading requirements of TEX. CIV. PRAC. & REM. CODE § 30.015(a), Plaintiff's business address is the same as Plaintiff's principal place of business stated above.

5.      Defendant BOTTLED CITY HOLDINGS LLC – SERIES B INTEREST ("BCH") is, upon information and belief, a foreign series limited liability company organized and existing under the laws of the State of Delaware.  Plaintiff is informed and believes that the business address of Defendant BCH is 2536 Old Glenview Road, Wilmette, IL  60091.  Plaintiff is informed and believes that Defendant Integra Capital, LLC is Defendant BCH's manager or a manager.  As more fully described below, Defendant BCH has transacted or engaged in business with Plaintiff in the

*Plaintiff's Original Petition for Declaratory Judgment – Page 2*

EXHIBIT 1-2

Copy from re:SearchTX

State of Texas.  A search of the on-line records of the Secretary of State of Texas reflects that Defendant BCH is not registered to transact business in the State of Texas as required by Chapter 9 of the TEX. BUS. ORG. CODE.

      A.    <u>Designation of Secretary of State as Agent for Service of Process.</u> Consequently, pursuant to TEX. BUS. ORG. CODE § 5.251(2), 5.304 and/or TEX. CIV. PRAC. & REM. CODE § 17.044, the Secretary of State of Texas is designated as an agent for service of process upon Defendant BCH.   Service of process may be completed upon the Secretary of State of Texas as the agent for Defendant BCH by serving two copies of the citation with petition attached upon the Secretary of State by certified mail, return receipt requested by the clerk of the court as permitted under TEX. CIV. PRAC. & REM. CODE §17.026, or by any other method authorized by law.  *See*  TEX. R. CIV. P. 103, 106, 108.   The address to be used for serving process through the Secretary of State of Texas via certified mail, return receipt requested is:

<strong>SERVICE OF PROCESS<br>
SECRETARY OF STATE<br>
P.O. BOX 12079<br>
AUSTIN, TX  78711-2079</strong>

      6.    Defendant INTEGRA CAPITAL, LLC ("Integra") is, upon information and belief, a foreign limited liability company organized and existing under the laws of the State of Delaware. Plaintiff is informed and believes that the business address of Defendant Integra is 2536 Old Glenview Road, Wilmette, IL  60091.  Plaintiff is informed and believes that Defendant Integra is Defendant BCH's manager or a manager.   As more fully described below, Defendant Integra has transacted or engaged in business with Plaintiff in the State of Texas.  A search of the on-line records of the Secretary of State of Texas reflects that Defendant Integra is not registered to transact business in the State of Texas as required by Chapter 9 of the TEX. BUS. ORG. CODE.

EXHIBIT 1-2

Copy from re:SearchTX

A.    <u>Designation of Secretary of State as Agent for Service of Process.</u>
Consequently, pursuant to TEX. BUS. ORG. CODE § 5.251(2), 5.304 and/or TEX. CIV. PRAC. & REM. CODE § 17.044, the Secretary of State of Texas is designated as an agent for service of process upon Defendant Integra.   Service of process may be completed upon the Secretary of State of Texas as the agent for Defendant Integra by serving two copies of the citation with petition attached upon the Secretary of State by certified mail, return receipt requested by the clerk of the court as permitted under TEX. CIV. PRAC. & REM. CODE §17.026, or by any other method authorized by law.  *See* TEX. R. CIV. P. 103, 106, 108.   The address to be used for serving process through the Secretary of State of Texas via certified mail, return receipt requested is:

**SERVICE OF PROCESS**
**SECRETARY OF STATE**
**P.O. BOX 12079**
**AUSTIN, TX  78711-2079**

7.    Defendant CJK HOLDINGS, LLC ("CJK") is, upon information and belief, a foreign limited liability company organized and existing under the laws of the State of Delaware. Plaintiff is informed and believes that the business address of Defendant CJK is 2536 Old Glenview Road, Wilmette, IL  60091.  Plaintiff is informed and believes that Defendant Jeffrey Johnston-Legg is Defendant CJK's manager or a manager.  As more fully described below, Defendant CJK has transacted or engaged in business with Plaintiff in the State of Texas.  A search of the on-line records of the Secretary of State of Texas reflects that Defendant CJK is not registered to transact business in the State of Texas as required by Chapter 9 of the TEX. BUS. ORG. CODE.

A.    <u>Designation of Secretary of State as Agent for Service of Process.</u>
Consequently, pursuant to TEX. BUS. ORG. CODE § 5.251(2), 5.304 and/or TEX. CIV. PRAC. & REM. CODE § 17.044, the Secretary of State of Texas is designated as an agent for service of

*Plaintiff's Original Petition for Declaratory Judgment – Page 4*

**EXHIBIT 1-2**

Copy from re:SearchTX

process upon Defendant CJK.  Service of process may be completed upon the Secretary of State

of Texas as the agent for Defendant CJK by serving two copies of the citation with petition attached

upon the Secretary of State by certified mail, return receipt requested by the clerk of the court as

permitted under TEX. CIV. PRAC. & REM. CODE §17.026, or by any other method authorized

by law.  *See*  TEX. R. CIV. P. 103, 106, 108.   The address to be used for serving process through

the Secretary of State of Texas via certified mail, return receipt requested is:

**SERVICE OF PROCESS**
**SECRETARY OF STATE**
**P.O. BOX 12079**
**AUSTIN, TX  78711-2079**

8.    Defendant JEFFREY JOHNSTON-LEGG ("JJL" or "Legg") is an individual who

is a resident of the State of Illinois.  Plaintiff is informed and believes that the business address of

Defendant JJL is 2536 Old Glenview Road, Wilmette, IL  60091.  Plaintiff is informed and believes

that Defendant JJL is the manager or a manager of Defendant Integra and Defendant CJK.  As

more fully described below, Defendant JJL has transacted or engaged in business with Plaintiff in

the State of Texas in his individual capacity and/or in his capacity as the manager or a manager of

Defendant Integra and Defendant CJK.

A.    <u>Designation of Secretary of State as Agent for Service of Process.</u>  Pursuant

to TEX. CIV. PRAC. & REM. CODE § 17.044(b), the Secretary of State of Texas is designated

as an agent for service of process upon Defendant JJL because Defendant JJL is a non-resident

who has engaged in business in Texas, but does not maintain a regular place of business in Texas

or a designated agent for service of process and this proceeding arises out of the business

Defendant JJL has conducted with Plaintiff in Texas.  Service of process may be completed upon

the Secretary of State of Texas as the agent for Defendant JJL by serving two copies of the citation

with petition attached upon the Secretary of State by certified mail, return receipt requested by the

Copy from re:SearchTX

clerk of the court as permitted under TEX. CIV. PRAC. & REM. CODE §17.026, or by any other method authorized by law. *See* TEX. R. CIV. P. 103, 106, 108. The address to be used for serving process through the Secretary of State of Texas via certified mail, return receipt requested is:

**SERVICE OF PROCESS**
**SECRETARY OF STATE**
**P.O. BOX 12079**
**AUSTIN, TX 78711-2079**

**III.**
**JURISDICTION AND VENUE**

9.      Subject matter jurisdiction is proper in this Court because the damages, if any, and other relief sought are within the jurisdictional limits of this Court. Plaintiff seeks non-monetary relief, and expressly reserves the right to amend and seek monetary relief.

10.      This Court has *in personam* jurisdiction over Defendant BCH and Defendant Integra because such defendants have conducted business in the State of Texas within the meaning of TEX. CIV. PRAC. & REM. CODE § 17.042. At all material times, Defendant BCH acted by and through Defendant Integra, represented to be Defendant BCH's manager or a manager. In particular, and as more fully alleged elsewhere in this Petition, Defendant BCH, acting by and through Defendant Integra, contracted by mail or otherwise with Plaintiff, a Texas corporation, regarding a proposed investment in Plaintiff. On or about January 2, 2019, Plaintiff and Defendant BCH, acting by and through Defendant Integra, entered into that certain Letter of Understanding (the "LOU"). A true and correct copy of the LOU is attached to this Petition as Exhibit "A," and is incorporated by reference as if fully set forth herein. Pursuant to Paragraph 6 of the LOU, Defendant BCH and Defendant Integra agreed to submit to the jurisdiction of the courts of Texas in Denton County, Texas. In addition thereto, performance under the LOU occurred, in whole or

*Plaintiff's Original Petition for Declaratory Judgment – Page 6*

EXHIBIT 1-2

Copy from re:SearchTX

in part, in Texas.  In that regard, Defendant Jeffrey Johnston-Legg, the primary representative of Defendant BCH and Defendant Integra[1], made numerous trips to Plaintiff's office in Denton County, Texas to conduct due diligence in connection with the LOU, including oversight of a third-party fair market valuation of Plaintiff conducted in Texas by a Texas valuation company.  This suit arises out of the LOU.

11.    This Court has *in personam* jurisdiction over Defendant CJK because such defendant has conducted business in the State of Texas within the meaning of TEX. CIV. PRAC. & REM. CODE § 17.042.  At all material times, Defendant CJK acted by and through Defendant JJL, represented to be Defendant CJK's manager or a manager.  In particular, and as more fully alleged elsewhere in this Petition, Defendant CJK, acting by and through Defendant JJL, contracted by mail or otherwise with Plaintiff, a Texas corporation, regarding acquisition of shares in Plaintiff.  On or about September 8, 2017, Defendant CJK, acting by and through Defendant JJL, entered into a number of written agreements with Plaintiff, including but not limited to, (a) that certain Subscription Agreement (the "CJK Subscription Agreement") and (b) that certain Shareholder Agreement dated effective as of August 31, 2017, whereby Defendant CJK agreed to become a shareholder in Plaintiff and to be bound by the terms and conditions of such Shareholder Agreement (the "Shareholder Agreement").  True and correct copies of the CJK Subscription Agreement and the Shareholder Agreement are attached to this Petition as Exhibits "B" and "C," respectively, and are incorporated by reference as if fully set forth herein.  Performance of the CJK Subscription Agreement, the Shareholder Agreement, and related written agreements between Plaintiff and Defendant CJK took place, at least in part, in Texas.  Defendant JJL, the primary

---

[1] Plaintiff is informed and believes that Defendant Jeffrey Johnston-Legg is the manager of Defendant Integra.  In addition, by letter dated November 24, 2021, Jeffrey Johnston-Legg held himself out as the President of Defendant Integra.

*Plaintiff's Original Petition for Declaratory Judgment – Page 7*

EXHIBIT 1-2

Copy from re:SearchTX

representative of Defendant CJK, made numerous trips to Plaintiff's office in Denton County, Texas in connection with, *inter alia*, Defendant CJK's investment in Plaintiff. This suit arises out of Defendant CJK's investment in Plaintiff and the terms and conditions related to such investment as reflected in the Subscription Agreement, the Shareholder Agreement, and other related written agreements between Plaintiff and Defendant CJK.

12.     This Court has *in personam* jurisdiction over Defendant JJL because such defendant has conducted business in the State of Texas within the meaning of TEX. CIV. PRAC. & REM. CODE § 17.042. As set forth elsewhere herein, Defendant JJL served as the manager or a manager of Defendant BCH, Defendant Integra, and Defendant CJK (collectively, the "Entity Defendants") in connection with the respective agreements, transactions, and business dealings between such Entity Defendants and Plaintiff. Defendant JJL made numerous trips to Plaintiff's office in Denton County, Texas in connection with the agreements, transactions, and business dealings between the Entity Defendants and Plaintiff. In addition thereto, Defendant JJL provided CFO consulting services to Plaintiff from approximately January 2019 through June 2021, and made numerous trips to Plaintiff's office in Denton County, Texas in connection with the performance of such consulting services. In addition, during the time period of December 2019 through approximately June 2021, Defendant JJL, acting as the Plaintiff's CFO, put himself on the Plaintiff's payroll. This suit arises out of JJL's transactions and dealings with the Plaintiff.

13.     Venue is appropriate in Denton County, Texas pursuant to TEX. CIV. PRAC. & REM. CODE §15.035(a) because Defendant BCH and Defendant Integra expressly agreed and acknowledged in paragraph 6 of the LOU that Denton County is the proper venue for any dispute related to the LOU. Venue further is appropriate in Denton County, Texas pursuant to TEX. CIV. PRAC. & REM. CODE §15.002(a)(1) because Denton County is the county in which all or a

EXHIBIT 1-2

Copy from re:SearchTX

substantial part of the events or omissions giving rise to the claims occurred. Alternatively, venue is appropriate in Denton County, Texas pursuant to TEX. CIV. PRAC. & REM. CODE §15.002(a)(4) because Plaintiff's principal place of business is located in Denton County and the provisions of TEX. CIV. PRAC. & REM. CODE §15.002(a)(1), (2), and (3) do not apply. Alternatively, Plaintiff alleges that venue is appropriate in Denton County, Texas pursuant to TEX. CIV. PRAC. & REM. CODE §15.005 because Plaintiff has established proper venue against at least one Defendant and the claims against the other Defendants arguably arise out of the same series of transactions or occurrences: investment or proposed investment in Plaintiff by entities owned or controlled by Defendant JJL.

## IV.
## FACTUAL BACKGROUND REGARDING
## ALL TRANSACTIONS AT ISSUE

14. Plaintiff is a Texas corporation originally founded in 2008 as a family-owned business. Plaintiff's primary line of business is energy management solutions.

15. In August 2017, Plaintiff underwent a corporate reorganization. In connection with the corporate reorganization, Plaintiff's certificate of formation was amended effective on or about August 28, 2017 (the "Amended Certificate") and its bylaws were amended effective on or about August 29, 2017 (the "Amended Bylaws"). Pursuant to the Amended Certificate and Amended Bylaws, Plaintiff was authorized to issue up to 20,000,000 common stock without par value shares, consisting of up to 10,000,000 of voting common stock shares without par value and up to 10,000,000 of non-voting common stock shares without par value. In furtherance of the corporate reorganization, Plaintiff's Shareholder Agreement was amended effective on or about August 31, 2017 (the "Amended Shareholder Agreement"), to include provisions for the exercise of put and call rights. A Subscription Agreement and package of related documentation and disclosures were

EXHIBIT 1-2

Copy from re:SearchTX

prepared in connection with a 2017 subscription process (collectively, "Subscription Agreement").[2]

### A. Contractual Recission Regarding Potential BCH Investment

16. Defendant BCH is a Delaware series limited liability company, ultimately managed by Defendant JJL as the manager or a manager of Defendant Integra, the entity manager of Defendant BCH. As set forth elsewhere herein, Defendant JJL knew of Plaintiff because a JJL affiliated entity[3] became a shareholder of Plaintiff through a subscription process conducted in 2017. Consequently, JJL was familiar with the Plaintiff's corporate reorganization, as well as the terms and conditions of Plaintiff's Amended Certificate, Amended Bylaws, Amended Shareholder Agreement, and Subscription Agreement.

17. On or about January 2, 2019, Defendant BCH and Plaintiff entered into the LOU, a true and correct copy of which is attached to this Petition as Exhibit "A," and is incorporated by reference as if fully set forth herein. JJL executed the LOU on behalf of Defendant BCH as the Manager of Defendant Integra, acting as the Manager of Defendant BCH.

18. The LOU summarizes the understanding of the parties "concerning the possible investment by [Defendant BCH] in [Plaintiff] … referenced … as the 'Investment'." The terms of the LOU included the following:

A.   The purchase price for the shares was $1,000,000 (the "Purchase Price"), to be paid no later than January 7, 2019;

B.   The number of shares to be purchased was to be "mutually determined" by the parties based upon a third-party valuation to be completed on or before March 31, 2019;

C.   The classification of the shares as either Voting Common Shares or Non-Voting Common Shares was to be mutually agreed upon by the parties;

---

[2] The law firm of Vela Wood provided Plaintiff with legal representation in connection with its corporate reorganization and Subscription Agreement and related process.
[3] The affiliate is Defendant CJK.

*Plaintiff's Original Petition for Declaratory Judgment – Page 10*

EXHIBIT 1-2

Copy from re:SearchTX

D.      Upon consummation of the Investment, Defendant BCH would possess "all of the rights and privileges of ownership of the Shares" as of January 2, 2019;

E.      The Investment was conditioned and/or contingent upon Defendant BCH's (i) completion and execution of Accredited Investor Questionnaire, (ii) execution of the Plaintiff's Subscription Agreement, (iii) acceptance of the Amended Shareholder Agreement, and (iv) acceptance of the Amended Bylaws.

F.      Closing of the Investment further was conditioned upon the parties reaching mutual agreement regarding Defendant BCH's governance, control, and/or voting rights.

19.     Following the execution of the LOU, Defendant BCH funded the Purchase Price and began to conduct its due diligence.  The third-party valuation of Plaintiff was conducted as called for under paragraph 1.a of the LOU.  JJL, acting on behalf of Defendant Integra, the manager or a manager of Defendant BCH, supervised the valuation process and obtained the results of the valuation.

20.     The parties did not set a deadline and the LOU did not state a drop-dead deadline by which the Investment had to be consummated.  Rather, the LOU provided the parties with a contractual remedy of rescission should the parties determine that they were unable to consummate the Investment and execute the required documentation related to the Investment.  The contractual remedy of rescission is set forth in Paragraph 5 of the LOU, which states in pertinent part as follows:

> *"Rescission.  If the Parties are unable to consummate the Investment and execute the Investment Documents in a form mutually agreeable to the Parties, including without limitation an agreement on the Valuation and the number of Shares to be issued … then either Party may rescind this Letter by providing at least ten (10) days written notice to the other Party."*

(the "Rescission Remedy Provision").  In the event of a rescission, Plaintiff was required to "return the Purchase Price to [Defendant BCH] within five (5) business days from the effective date of the Rescission."

EXHIBIT 1-2

Copy from re:SearchTX

21.    Despite the due diligence efforts undertaken pursuant to the LOU, the Investment was never consummated.  It is undisputed that Plaintiff and Defendant BCH and Defendant Integra never reached mutual agreement regarding material terms of the Investment.  It is further undisputed that Defendant BCH and Defendant Integra, acting on its behalf, never accepted, and in fact, expressly rejected the Plaintiff's Amended Bylaws and Amended Shareholder Agreement and refused to execute the Subscription Agreement.  As late as November 24, 2021, JJL, acting as President of Integra, notified Plaintiff as follows:

> *"Also, there was never mutual agreement that this equity investment would be bound by the subscription and shareholder agreements of August 2017.  As you know, from the beginning I expressly rejected several conditions in those August 2017 agreements, including the put/call provisions (among others)."*

22.    It is undisputed that necessary conditions to the consummation of the Investment were never satisfied; that the parties were unable to consummate the Investment; and that Defendant BCH never became a shareholder of Plaintiff.  Accordingly, by letter dated December 22, 2021, Plaintiff notified Defendant BCH of Plaintiff's exercise of the Rescission Remedy Provision (the "Notice of Recission").  A true and correct copy of the Notice of Recission is attached to this Petition as Exhibit "B," and is incorporated by reference as if fully set forth herein.

23.    Pursuant to the Notice of Rescission, Plaintiff notified Defendant BCH of its intent to exercise the Rescission Remedy Provision effective Saturday, January 1, 2022 (the "Rescission Date") and to return the Purchase Price to Defendant BCH on or before January 7, 2022 (the "Rescission Funding Date"), which was the fifth business day from the Rescission Date.

24.    Defendant BCH reacted to the Notice of Rescission on or about December 24, 2021, by and through its legal counsel, stating in pertinent part as follows

*Plaintiff's Original Petition for Declaratory Judgment – Page 12*

EXHIBIT 1-2

Copy from re:SearchTX

*"I write to confirm receipt of the Notice of Rescission regarding the January 2, 2019 Letter of Understanding, together with the confidential confirmation that the $1 million rescission amount has been deposited into your firm's IOLTA account. Although we disagree with MSCI's characterization the circumstances that have brought our clients to this point, there is little point is having a debate about that, other than to say that Mr. Johnston-Legg reserves all rights that he may have in connection with the $1 million advance."*

25.     On the Rescission Funding Date, Plaintiff caused the Purchase Price to be returned to Defendant BCH via wire transfer into the bank account designated by legal counsel for Defendant BCH.  It is undisputed that Defendant BCH accepted the wire transfer and has retained the Purchase Price.  Consequently, as of the Rescission Funding Date, the contractual remedy of rescission exercised by Plaintiff has been consummated.

### B.     Contractual Redemption of 100% of CJK Shares

26.     Plaintiff is informed and believes that Defendant CJK is an investment vehicle owned and controlled by Defendant JJL for the purpose of acquiring and managing personal investments.[4]  According to the on-line data base and records of the Securities and Exchange Commission, Defendant JJL is or was a registered investment adviser and/or broker[5], making him a highly sophisticated investor.

27.     Defendant JJL was introduced to one or more members of Plaintiff's management team through another shareholder.  On or about September 8, 2017, Defendant CJK, acting by and through JJL, executed and delivered Plaintiff's Subscription Agreement package, consisting of the following investment disclosures and materials:

    a.     MSCI Investments, Inc. Subscription Agreement for Non-Voting Common Stock dated August 2017;

    b.     Shareholder Agreement;

---

[4] By contrast, Plaintiff is informed and believes that Defendant BCH, which is controlled by JJL through Defendant Integra, is owned by third-party investors.

[5] A review of JJL's IAPD report as of June 1, 2022, reflects that JJL was registered as an investment advisor with Defendant Integra Capital from 2006-2015, and that he is currently employed as a registered representative of LaSalle Street Securities in Chicago, and is self-employed as a trader.

Copy from re:SearchTX

      c.      Spousal Consent;

      d.      Accredited Investors Questionnaire;

      e.      Certificate of Formation;

      f.      Certificate of Amendment;

      g.      Amended Bylaws;

      h.      Capitalization Table; and

      i.      Promissory Note.

(the "Subscription Package").  The Subscription Package is voluminous and is not attached to this Petition.

28.    Pursuant to the Subscription Package, Defendant CJK subscribed to purchase 112,000 shares of non-voting common stock ("NVCS") in Plaintiff for $0.50 per share, for a total aggregate purchase price of $56,000.  In addition, Defendant CJK loaned the sum of $84,000 to the Plaintiff, and the Plaintiff executed and delivered to Defendant CJK that certain 5-year promissory note in the principal amount of $84,000 (referred to as "Note 19").[6]

29.    Subsequently, Defendant CJK requested that Plaintiff convert the sum of $34,000, representing a portion of the $84,000 outstanding principal balance under Note 19, to equity in Plaintiff, and Plaintiff agreed to such conversion of debt to equity to be effective as of on or about December 31, 2018 (the "First Debt Conversion").  The First Debt Conversion reduced the outstanding principal balance under Note 19 from $84,000 to $50,000 and increased the number of shares in the Plaintiff owned by Defendant CJK from 112,000 to 180,000 shares of NVCS with a value of $0.50 per share.

---

[6] Note 19 matured on August 28, 2022, and was paid in full.

EXHIBIT 1-2

Copy from re:SearchTX

30.     Effective on or about December 31, 2018, Defendant CJK agreed to loan the sum of

$69,000 to the Plaintiff, and pursuant thereto, Defendant CJK transferred such sum to Plaintiff on

or about February 25, 2019 (the "CJK Loan").  Defendant CJK further requested that the Plaintiff

convert all principal under the CJK Loan to equity in the Plaintiff, and the Plaintiff subsequently

agreed to such conversion of debt to equity to be effective December 31, 2018 (the "Second Debt

Conversion").  Following the Second Debt Conversion, Defendant CJK owned a total of 318,000

shares of NVCS in the Plaintiff, with a value of $0.50 per share (the "CJK Shares").

31.     Section 1.3(b) of the Shareholder Agreement gives the Plaintiff the contractual right

to make a demand call for redemption of shares held by a shareholder in the Plaintiff (the "Call

Right").  The applicable provision states in pertinent part as follows:

> "(b) Call.  … after the Effective Date, the Corporation has the right to provide
> written demand on each and/or every Shareholder who holds NVCS to purchase
> each such Shareholder's NVCS at the Fair Market Value (as defined in Section
> 7.4) for each share (with the purchase on an equal pro-rata basis), and upon any
> such Shareholder receiving such written demand, such Shareholder shall, within
> thirty days of receiving such written demand, sell such NVCS to the Corporation
> at the Fair Market Value of such NVCS and the Corporation shall pay such
> Shareholder with either: (i) cash; or (ii) forty-eight month promissory note (with
> approximately equal payments thereto, except for rounding) with interest
> compounding yearly and with the interest rate on such loan set on the date of the
> first payment at the national prime interest rate. The Corporation has the sole and
> full power and authority to determine whether to select Section 1.3(b)(i) or
> Section 1.3(b)(ii) in paying for such NVCS …"

32.     Section 7.4 of the Shareholder Agreement sets forth the process for determining the

fair market value of shares subject to a Call Right (the "Fair Market Value"), such amount to be

included as the purchase price for such shares.  The applicable provision states in pertinent part as

follows:

> "7.4 Fair Market Value. The Purchase Price of the Selling Shareholder's Stock
> determined under this Section 7.4 shall be based upon the Fair Market Value (as
> defined below). Any applicable party can request a Fair Market Value
> determination …
>
> For purposes of determining Fair Market Value, such term means the value which
> is the greater of: (a) if determining NVCS within the five fiscal years after the

*Plaintiff's Original Petition for Declaratory Judgment – Page 15*

EXHIBIT 1-2

Copy from re:SearchTX

Effective Date, $0.50 per share; or (b) the price that a knowledgeable, willing and unpressured buyer is willing, but is not under any duty, to pay for the Selling Shareholder's stock to the Selling Shareholder, who is knowledgeable, willing and unpressured, but not obligated, to sell. Any and all characteristics of the applicable Selling Shareholder's stock (including but not limited to accounting for any and all differences in voting and non-voting stock) and the Corporation shall be taken into determining Fair Market Value."

33.    Plaintiff determined that the Fair Market Value of the CJK Shares was $0.50 per share.  By written notice and demand dated January 7, 2022 (the "January 7 Call Demand"), Plaintiff made demand upon Defendant CJK to sell 112,000 of the CJK Shares to Plaintiff for the Fair Market Value, for a total purchase price of $56,000, payable in the form of a 48-month promissory note as allowed in Section 1.3(b) of the Shareholder Agreement.  A true and correct copy of the January 7 Call Demand is attached to this Petition as Exhibit "C," and is incorporated by reference as if fully set forth herein.

34.    Subsequently, Plaintiff determined to exercise its Call Right to purchase 100% of the CJK Shares pursuant to Section 1.3(b) of the Shareholder Agreement.  By amended written notice and demand dated February 2, 2022 (the "February 2 Call Demand"), the Plaintiff made demand upon Defendant CJK to sell 100% of the CJK Shares, constituting 318,000 shares of NVCS in Plaintiff, to Plaintiff.  The February 2 Call Demand included a Fair Market Value price of $0.50 per CJK Share, for a total sales price of $159,000, payable in the form of a 48-month promissory note as set forth in Section 1.3(b) of the Shareholder Agreement. A true and correct copy of the February 2 Call Demand is attached to this Petition as Exhibit "D," and is incorporated by reference as if fully set forth herein.

35.    Pursuant to Section 1.3(b) of the Shareholder Agreement, Defendant CJK was contractually obligated to sell 100% of the CJK Shares to the Company at the Fair Market Value within thirty days of receipt of the February 2 Call Demand, which was March 4, 2022 (the "Redemption Date"), subject only to CJK's request for a Fair Market Valuation and invocation of

Copy from re:SearchTX

the appraisal process set forth in Section 7.4 of the Shareholder Agreement.  It is undisputed that Defendant CJK did not make a request for a Fair Market Value determination or Purchase Price in response to either the January 7 Call Demand or the February 2 Call Demand.

36.     By email dated February 2, 2022, counsel for the Plaintiff transmitted proposed draft instruments deemed appropriate to document and reflect the consummation of the sale of the CJK Shares and transfer of the stock to counsel for Defendant CJK for review and comment.  By email dated February 9, 2022, counsel for Defendant CJK indicated that the proposed draft instruments were not acceptable, but declined to propose edits or furnish draft instruments that would be acceptable.

37.     By letter dated February 9, 2022 (the "February 9 Redemption Note Letter"), Plaintiff delivered the executed 48-month promissory note in the original principal amount of $159,000 payable to Defendant CJK, representing the purchase price for the CJK Shares as set forth in Section 1.3(b) and Section 7.7 of the Shareholder Agreement (the "CJK Redemption Note").   True and correct copies of the February 9 Redemption Note Letter and the CJK Redemption Note are attached to this Petition as Exhibits "E" and "F," respectively, and are incorporated by reference as if fully set forth herein.

38.     By letter dated February 9, 2022 (the "February 9 Stock Transfer Letter"), counsel for Plaintiff made demand upon Defendant CJK, by and through its legal counsel, to consummate the sale of the CJK Shares to Plaintiff pursuant to the February 2 Call Demand and Sections 1.3(b) and 7.4 of the Shareholder Agreement.  A true and correct copy of the February 9 Stock Transfer Letter (without referenced enclosures) is attached to this Petition as Exhibit "G," and is incorporated by reference as if fully set forth herein.   As of the date of the filing of this Petition, Defendant CJK's counsel has not responded to the February 9 Stock Transfer Letter, and

*Plaintiff's Original Petition for Declaratory Judgment – Page 17*

EXHIBIT 1-2

Copy from re:SearchTX

Defendant CJK has failed and refused to furnish the instruments deemed appropriate by counsel for Plaintiff to document and reflect the consummation of the sale of the CJK Shares and transfer of the stock to the Plaintiff.

39.     Plaintiff tendered the first payment under the CJK Redemption Note on or about February 28, 2022, and has continued to timely make the contractual note payments.  Defendant CJK has accepted each of the contractual note payments made to date under the CJK Redemption Note.  Consequently, as of the Redemption Date, the Plaintiff consummated its purchase of 100% of the CJK Shares through exercise of its contractual Call Right, and Defendant CJK no longer owned the CJK Shares.

## V.
## REQUEST FOR DECLARATORY JUDGMENT

40.     Plaintiff re-states and incorporates all preceding paragraphs.  This request for declaratory relief is brought under the Uniform Declaratory Judgments Act, TEX. CIV. PRAC. & REM. CODE § 37.001 et al.

41.     Plaintiff is a person interested under a written contract or other writings within the meaning of TEX. CIV. PRAC. & REM. CODE § 37.004.

42.     All persons who have or claim any interest that would be affected by the declaratory relief requested herein have been made parties.

### COUNT ONE
### Request for Declaratory Relief Relating to
### Contractual Recission Transaction Regarding Potential BCH Investment

43.     Plaintiff and Defendant BCH, acting by and through Defendant Integra, its manager or a manager, are parties to the LOU.  Defendant JJL executed the LOU as the Manger of Defendant Integra, itself the Manager of Defendant BCH.

EXHIBIT 1-2

Copy from re:SearchTX

44.     Plaintiff exercised the contractual remedy of rescission under paragraph 5 of the LOU and returned the Purchase Price to Defendant BCH on the Rescission Funding Date.

45.     Upon exercise of the contractual remedy of rescission, the parties are relieved of all duties and obligations to each other, except for the limited contractual rights, duties and/or obligations which survived rescission, as stated in Paragraph 5 of the LOU:

> *"If either Party elects to rescind this [LOU] … then each Party shall be free of all duties and obligations under this [LOU] to each other, except for the provisions of Section 3 (Confidential Information), Section 4 (Expenses) and this Section 5 (Rescission) … which shall remain effective and applicable."*

46.     A threatened or actual dispute exists among the parties with respect to the effect of the exercise of the contractual remedy of rescission under the LOU.  Defendant BCH, acting by and through Defendant JJL, the manager of Defendant Integra, the manager or a manager of Defendant BCH, has asserted the position, by and through legal counsel, that Defendant JJL "*reserves all rights … in connection with the $1 million advance.*"  By letter dated May 25, 2022, counsel for Defendant BCH alleged that Defendant retains certain threatened extra-contractual claims against Plaintiff regarding the Investment following the exercise of the contractual remedy of rescission, including but not limited to the following:

a.      the allegation that Plaintiff "made a variety of promises with respect to the structure of the investment and the use of the proceeds of the investment that turned out to be false";

b.      the allegation that "$750,000 [of the $1 million advance] was used [improperly] for the purpose of securing a line of credit" and that the remaining $250,000 "was diverted to self-evidently improper purposes such as funding [Plaintiff's working capital requirements, to fund interest-free loans to [Plaintiff's] principals to support their lifestyles, and to fund interest-free loans to TEMSCO to support that entity's operations … [as a means] of disguising and avoiding tax on compensation";

c.      claiming minority shareholder status as a basis for entitlement to examine Plaintiff's books and records, and obtain information regarding "the source of the funds for the rescission and the means by which the capital was raised,

in order to assess the effect of those activities on minority members, such as [Defendant BCH]";

d.   making written demand for inspection of Plaintiff's corporate books and records pursuant to Section 21.218 of the Tex. Bus. Org. Code to "enable … [evaluation of compliance] by Plaintiff and its key principals with their fiduciary duties of care and loyalty to the company and its minority members, as well as compliance with the company's by-laws and other governing regulations" going back to January 1, 2015.

(the "May 25 Demand Letter").   A true and correct copy of the May 25 Demand Letter is attached to this Petition as Exhibit "H," and is incorporated by reference as if fully set forth herein.

47.   Plaintiff contends that the contractual remedy of rescission is the sole bargained for remedy available to the parties with respect to any and all claims of any kind or character whatsoever arising from or related to the LOU and the Investment.  Plaintiff further contends that upon consummation of the contractual remedy of rescission, which occurred on the Rescission Funding Date, the only "rights" reserved to Defendant BCH and Defendant Integra consist of the following:

A.   the contractual obligations under Paragraph 3 of the LOU regarding Confidential Material, including:

i.  to hold in strict confidence all information concerning the business and affairs of the Plaintiff obtained from the Plaintiff and its agents;

ii. to use Confidential Material solely for the purpose of evaluating the Investment and to limit the disclosure of such material to officers, employees and representatives;

iii. to return or destroy all Confidential Material if the Investment is not consummated;

B.   the contractual obligations under Paragraph 4 of the LOU regarding each Party's economic responsibility for its own fees, expenses, and costs in connection with the LOU and the Investment; and

C.   the contractual rights under Paragraph 5 of the LOU regarding rescission.

*Plaintiff's Original Petition for Declaratory Judgment – Page 20*

EXHIBIT 1-2

Copy from re:SearchTX

48.     Based on the May 25 Demand Letter, Plaintiff contends that there is substantial risk that Defendant BCH will bring extra-contractual or other claims against Plaintiff arising under the LOU and/or related to the LOU and the Investment, and seeking recovery of monetary damages and/or other remedies unless this Court determines and declares the effect of the contractual remedy of rescission exercised and consummated by Plaintiff under Paragraph 5 of the LOU. Therefore, Plaintiff hereby seeks a declaratory judgment determining and declaring as follows:

A.    The LOU is a valid, binding, and enforceable contract between Plaintiff and Defendant BCH.

B.    Defendant Integra, the manager or a manager of Defendant BCH, acting by and through Defendant JJL as its manager or officer, is bound by the LOU.

C.    The contractual remedy of rescission contained in Paragraph 5 of the LOU is the sole bargained for remedy available to the parties with respect to any and all claims of any kind or character whatsoever arising from or related to the LOU and the Investment.

D.    Return of the Purchase Price to Defendant BCH pursuant to exercise of the contractual remedy of rescission contained in Paragraph 5 of the LOU is the sole bargained for remedy available to the parties with respect to any and all claims of any kind or character whatsoever arising from or related to the LOU and the Investment.

E.    The parties were unable to consummate the Investment under the LOU and were unable to execute Investment Documents in a form mutually agreeable to the Parties.

F.    Plaintiff exercised the contractual remedy of rescission under Paragraph 5 of the LOU by notice letter addressed to Defendant BCH dated December 22, 2021, providing Defendant BCH with ten days written notice of intent to rescind the LOU effective January 1, 2022.

G.    Plaintiff returned the Purchase Price to Defendant BCH on January 7, 2022, which was within five (5) business days from the effective date of the rescission.

H.    Defendant BCH received and accepted the Purchase Price on January 7, 2022, and has not refunded, returned or otherwise rejected the Purchase Price.

EXHIBIT 1-2

Copy from re:SearchTX

I.      Plaintiff consummated the contractual remedy of rescission under Paragraph 5 of the LOU as of January 7, 2022.

J.      The only duties and obligations of the parties that survived the consummation of the contractual remedy of rescission are the provisions of Section 3 (Confidential Information), Section 4 (Expenses), and Section 5 (Rescission) of the LOU.

K.      Because the parties were unable to consummate the Investment under the LOU, Defendant BCH did not become a shareholder in Plaintiff and does not hold the contractual or statutory rights of a shareholder.

L.      Defendant BCH is not entitled to exercise the statutory right of inspection under Tex. Bus. Orgs. Code, Sec. 21.218 because Defendant BCH was not "a holder of shares of [Plaintiff] for at least six months immediately preceding [the May 25 Demand Letter], or a holder of at least five percent of all of the outstanding shares [of Plaintiff]."

## COUNT TWO
### Request for Declaratory Relief Relating to
### Contractual Redemption of 100% of CJK Shares

49.    Plaintiff and Defendant CJK, acting by and through Defendant JJL, its manager or a manager, are parties to, *inter alia*, the Shareholder Agreement.   On or about September 8, 2017, Defendant JJL executed the Shareholder Agreement and related documents constituting the Subscription Package as the Manager of Defendant CJK.

50.    Plaintiff exercised the contractual Call Right pursuant to Sections 1.3(b) and 7.4 of the Shareholder Agreement with respect to 100% of the CJK Shares.   On or about February 9, 2022, Plaintiff tendered the purchase price of $159,000 for 100% of the CJK Shares to Defendant CJK in the form of the CJK Redemption Note, as expressly set forth in Section 1.3(b) and Section 7.7 of the Shareholder Agreement, and began making timely payments under the CJK Redemption Note.   Plaintiff consummated the purchase of 100% of the CJK Shares as of the Redemption Date, and as of the Redemption Date, Defendant CJK was no longer a shareholder of Plaintiff.

EXHIBIT 1-2

Copy from re:SearchTX

51.    A threatened or actual dispute exists among the parties with respect to the effect of the exercise of the contractual Call Right as to 100% of the CJK Shares under the Shareholder Agreement.  Pursuant to the May 25 Demand Letter, counsel for Defendant CJK generally alleged that (i) the "invocation of the call provision … was on terms that [Defendant] CJK regards as unfavorable," and (ii) circumstances "raise questions about … fiduciary obligations to minority members."   The May 25 Demand Letter further stated the Defendant CJK was reserving "rights with respect to any irregularities in the documents that were used to induce [Defendant CJK's] investment," and set forth written demand for inspection of Plaintiff's corporate books and records pursuant to Section 21.218 of the Tex. Bus. & Org. Code.

52.    Based on the May 25 Demand Letter, Plaintiff contends that there is substantial risk that Defendant CJK will bring contractual, extra-contractual or other claims against Plaintiff arising under and/or related to the Shareholder Agreement and the Subscription Package, and seeking recovery of monetary damages and/or other remedies unless this Court determines and declares the effect of the exercise of the contractual Call Right consummated by Plaintiff under Sections 1.3(b) and 7.4 of the Shareholder Agreement. Therefore, Plaintiff hereby seeks a declaratory judgment determining and declaring as follows:

A.    The Shareholder Agreement is a valid, binding, and enforceable contract between Plaintiff and  Defendant CJK.

B.    Defendant JJL, the manager or a manager of Defendant CJK, executed the Shareholder Agreement on behalf of Defendant CJK on or about September 8, 2017, and is bound by the Shareholder Agreement.

C.    The Subscription Agreement is a valid, binding, and enforceable contract between Plaintiff and  Defendant CJK.

D.    Defendant JJL, the manager or a manager of Defendant CJK, executed the Subscription Agreement on behalf of Defendant CJK on or about September 8, 2017, and is bound by the Subscription Agreement.

EXHIBIT 1-2

Copy from re:SearchTX

E.     Pursuant to the February 2 Call Demand, Plaintiff exercised the contractual Call Right under Section 1.3(b) of the Shareholder Agreement by providing written demand to Defendant CJK to purchase 100% of the CJK Shares at the Fair Market Value of $0.50 per share for an aggregate purchase price of $159,000 for 318,000 shares of non-voting common stock.

F.     Pursuant to Section 7.4 of the Shareholder Agreement, upon receipt of the February 2 Call Demand, Defendant CJK had the right to request a Fair Market Value determination and Purchase Price for the CJK Shares, but failed to do so. Accordingly, Defendant CJK waived any objection to the Fair Market Value and Purchase Price for the CJK Shares set forth in the February 2 Call Demand.

G.     Pursuant to Section 1.3(b) of the Shareholder Agreement, upon receipt of the February 2 Call Demand, Defendant CJK was contractually obligated to sell the CJK Shares to the Plaintiff at the Fair Market Value of $0.50 per share within thirty (30) days, which was March 4, 2022.

H.     Plaintiff had the right to pay Defendant CJK for the CJK Shares with a forty-eight month promissory note in accordance with the requirements of Section 1.3(b) and Section 7.7 of the Shareholder Agreement.

I.     On or about February 9, 2022, Plaintiff executed and delivered the CJK Redemption Note to Defendant CJK in conformity with the requirements of Section 1.3(b) of the Shareholder Agreement.

J.     On or about February 28, 2022, Plaintiff made the first payment under the CJK Redemption Note, and Defendant CJK received and accepted such payment. Plaintiff has continued to make timely payments under the CJK Redemption Note, and Defendant CJK has continued to receive and accept such payments.

K.     Plaintiff consummated the purchase of 100% of the CJK Shares from Defendant CJK under the terms of the Shareholder Agreement as of the Redemption Date.

L.     Notwithstanding Defendant CJK's failure and refusal to execute and deliver the stock transfer instruments deemed appropriate to document and reflect the purchase by and transfer of the CJK Shares to Plaintiff, as of the Redemption Date, Plaintiff became the owner of 100% of the CJK Shares, with such ownership to be reflected upon the books and records of the corporation for all purposes.

M.     As of the Redemption Date, Defendant CJK was a creditor of Plaintiff, but not a shareholder.

EXHIBIT 1-2

Copy from re:SearchTX

N.    Defendant CJK is not entitled to exercise the statutory right of inspection under Tex. Bus. Orgs. Code, Sec. 21.218 because Defendant CJK was not "a holder of shares of [Plaintiff] for at least six months immediately preceding [the May 25 Demand Letter], or a holder of at least five percent of all of the outstanding shares [of Plaintiff]."

53.    To the extent necessary or appropriate, Plaintiff further seeks a declaratory judgment specifically enforcing Section 1.3(b) of the Shareholder Agreement by requiring Defendant CJK to specifically perform its contractual obligation to sell and transfer 100% of the CJK Shares to Plaintiff as of the Redemption Date pursuant to the February 2 Call Demand.

54.    Section 8.14 of the  Shareholder Agreement states as follows:

"8.14 Litigation Costs. If any legal action or any arbitration or other proceeding is brought for the enforcement of this Shareholders' Agreement, or because of an alleged dispute, breach, default or misrepresentation in connection with any of the provisions of this Shareholders' Agreement, the successful or prevailing party or parties shall be entitled to recover reasonable attorneys' fees and other costs incurred in that action or proceedings, in addition to any other relief to which it or they may be entitled."

Plaintiff asserts that Count Two herein is brought for the enforcement of the Shareholder Agreement, or because of an alleged dispute, breach, default or misrepresentation in connection with any of the provisions of the Shareholder Agreement.  Consequently, Plaintiff alleges entitlement to recover its reasonable attorneys' fees and other costs incurred in this cause, in addition to any other relief to which it may be entitled.

# VI.
# ATTORNEY'S FEES

55.    Plaintiff has engaged the law firm of Shields Legal Group to present this claim. Plaintiff seeks recovery of its costs and reasonable and necessary attorney's fees as are equitable and just pursuant to TEX. CIV. PRAC. & REM. CODE § 37.009.

56.    Plaintiff further seeks recovery of its reasonable attorneys' fees and cost incurred in connection with Count 2 pursuant to Section 8.14 of the Shareholder Agreement and TEX. CIV. PRAC. & REM. CODE § 38.001.

EXHIBIT 1-2

Copy from re:SearchTX

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff MSCI INVESTMENTS, INC. respectfully prays that Defendant BOTTLED CITY HOLDINGS LLC – SERIES B INTEREST, INTEGRA CAPITAL, LLC, CJK HOLDINGS, LLC, and JEFFREY JOHNSTON-LEGG be cited to appear and answer herein, and that after final hearing, Plaintiff have judgment against such Defendants as follows:

a.  Declaratory and other relief as requested herein above;

b.  Reasonable and necessary attorney's fees and taxable court costs, to the extent allowed by law; and

c.  Such other and further relief to which Plaintiff has shown itself to be entitled at law or in equity.

Dated:  December 27, 2022

Respectfully submitted,

**SHIELDS LEGAL GROUP**
*A Professional Corporation*

By:   *David A. Shields*_____
David A. Shields
State Bar No. 24083838
Katherine D. Hoke
State Bar No. 05898350
Victor D. John
State Bar No. 24120119
16400 Dallas Parkway
Suite 300
Dallas, TX  75248
Office Tel: 972-788-2040
Office Fax: 972-788-4332
E-mail:   dshields@shieldslegal.com
khoke@shieldslegal.com
vjohn@shieldslegal.com

**ATTORNEYS FOR PLAINTIFF MSCI INVESTMENTS, INC.**

Copy from re:SearchTX